BENJAMIN W. BYERS, otherwise called ALLEN AN-
DERSON *vs.* THE STATE OF MARYLAND.

*Criminal practice—Motion in arrest of Judgment—Writ of
Error—Alteration of Indictment by the Grand jury.*

A person was indicted for bigamy, and upon trial was found guilty.
A motion was made in arrest of judgment, and in support of the
motion affidavits of the Clerk and State's Attorney, and a state-
ment of the Judge were filed, showing that after the indictment
had been returned, duly indorsed by the foreman "true bill," it
was on the application of the foreman and the State's Attorney
and by permission of the Court taken back to the grand jury
room, and the name of the person to whom the accused was
alleged to have been married the second time, was inserted in a
blank space, which had been left for that purpose, and which
through inadvertence was left unfilled when the indictment had
been first returned to the Court; and the indictment thus corrected
was again on the same day returned to the Court by the grand
jury. On an appeal as upon Writ of Error, taken from the over-
ruling by the Court below of the motion in arrest of judgment,
it was HELD :

1st. That the affidavits and statement constituted no part of the
record, to which alone this Court is confined in reviewing any
judgment of an inferior Court upon writ of error.

2nd. That a motion in arrest, must be founded upon some error ap-
parent upon the face of the record; and extrinsic or foreign matters
not so appearing, are wholly unavailable for this purpose.

3rd. That if the matters alleged, and shown by the affidavits and
statement rendered the indictment substantially defective, advan-
tage should have been taken of them by a motion to quash or to
set it aside before pleading not guilty, or by some form of pro-
ceeding other than a motion in arrest.

4th. That even if the question had been open for review, the ob-
jection to the indictment could not be sustained, as what the
grand jury did, was substantially the same thing as finding and
returning a new indictment in the form in which the old indict-
ment as corrected stood.

APPEAL as upon Writ of Error from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

The cause was submitted to MILLER, STONE, IRVING, RITCHIE, and BRYAN, J.

*Edward Stake,* for the appellant.

*Charles B. Roberts, Attorney-General,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The plaintiff in error was indicted for bigamy. The indictment, which is set out in the record, is in proper form and free from objection. Upon this indictment he was arraigned, pleaded not guilty, submitted his case to the Court for trial, and was found guilty. He then moved in arrest of judgment, stating as the ground of his motion that the words "Jennie V. Miller," the name of the woman whom he was charged to have married during the life of his wife, were not found by the grand jury in their finding of the "true bill against him," but were improperly and without warrant inserted after said true bill was found.

The Court overruled this motion, sentenced the prisoner to the penitentiary for three years, and the case has been brought to this Court as upon Writ of Error.

In support of and against the motion in arrest affidavits of the clerk and the State's Attorney, and a statement by the Judge who presided at the trial, were made. From these it appears that the grand jury returned the indictment duly endorsed by the foreman "true bill" on the 20th of November, 1884. The next day the foreman and the State's Attorney came to the Court and called attention to the fact, that the name of the party to whom the accused was alleged to have been married the second time

Byers *vs.* State.

had by inadvertence been omitted from the indictment, although a blank space for that purpose had been left in the indictment, and made the request to correct this omission by inserting the name of "Jennie V. Miller." The Court, however, directed the foreman to go to the grand-jury room and make the matter known to his fellow jurors; so that the grand jurors might appear at the bar of the Court and make formal application for that purpose. This was done, and soon afterwards on the same day the grand jury appeared at the bar of the Court, and through their foreman requested the return of the indictment for the purpose of filling up the blank therein with the name of "Jennie V. Miller;" and upon this request the Court directed the clerk to return the indictment to the foreman for the purpose aforesaid. The indictment was then placed in the hands of the foreman in the presence of his fellow jurors in open Court. The grand jury then retired to their room, and subsequently on the same day returned the same indictment again to the bar of the Court and delivered it to the Court with the name of the said "Jennie V. Miller" inserted in the space so as aforesaid left blank, and the Court received it and handed it to the clerk endorsed as aforesaid.

But these affidavits and this statement constitute no part of the record, to which alone this Court is confined in reviewing any judgment of an inferior Court upon writ of error. It is well settled, that a motion in arrest must be founded upon some error apparent upon the face of the record; for the only ground on which judgments can be arrested is some matter intrinsic appearing on the record which renders them erroneous and reversible, and extrinsic or foreign matters not so appearing are wholly unavailable for this purpose. 1 *Poe's Pl. and Pr.*, sec. 750; *Gover vs. Turner*, 28 *Md.*, 606; *Archer vs. State*, 45 *Md.*, 461; *Long, et al. vs. Bailey & Caldwell*, 43 *Md.*, 17; *State vs. Phelps*, 9 *Md.*, 25. That which appears ill upon

the same record may be alleged in arrest of judgment; but not a matter of fact which doth not appear upon the record. *Trials per Pais*, 328. In the present case there is no defect in the indictment as it is set out in the record, upon which the plaintiff in error was arraigned and to which he pleaded, nor is there any defect in the verdict or finding of the Court. His effort, in effect, is to show by extrinsic evidence that the indictment upon which he was tried was not the indictment found by the grand jury, and for that purpose resort is had to these affidavits and this statement of the Judge. In other words, he seeks to assail the legal sufficiency of the indictment by matter *dehors* the record. This cannot be done upon a motion in arrest of judgment. If the matters alleged and shown by these affidavits and statement rendered the indictment substantially defective, he should have taken advantage of them by a motion to quash or to set it aside, before pleading not guilty, or by some form of proceeding other than a motion in arrest. The case is quite different from that of *Ford vs. State*, 12 *Md.*, 514. In that case the controversy was whether the jury had, in point of fact, found the *verdict* which the clerk had recorded, and this Court took the *judgment* of the Court below as to what 'the jury actually did find as part of the record, and then determined that such finding thus *judicially* ascertained, did not, as matter of law authorize the judgment pronounced against the prisoner, and accordingly reversed it. As we have shown, no such state of facts exists here, and the writ of error must be dismissed.

But even if the question were open for review we do not think this objection to the indictment could be sustained. It is settled law everywhere that when a grand jury is in session, they and their proceedings are under the general superintendence and control of the Court, and that the Court may at any time re-commit to them an im-

perfect finding. *Wharton's Crim. Pl. & Pr.*, sec. 376; *Archbold's Crim. Pr. & Pl.*, 211, *note* 1; *Low's Case*, 4 *Greenleaf's Rep.*, 450. In this State the mode of returning presentments and bills of indictment by grand juries and filing them by the clerks, is not regulated by statute, but is governed by uniform and long established usage and practice. According to this practice the grand jury when they are ready to make a return come into open Court with their foreman, their entrance being announced by a bailiff, and the clerk then calls them severally by their names, and says: " Gentlemen, have you agreed upon any presentments or bills of indictment?" The response being in the affirmative, they are then requested by the clerk " to present them to the Court," and upon the delivery of them he says: "Are you content the Court shall amend matter of form, altering no matter of substance without your privity in these bills you have found?" To this they give assent and then return to their room. When the papers have been thus delivered to the Court the Judge examines them, and unless they are obviously erroneous delivers them to the clerk, who thereupon files them and makes the proper entries on the criminal docket, and they then become part of the records of the Court. If, however, the Judge discovers an obvious mistake or error in any such paper, instead of delivering it to the clerk he sends for the foreman of the grand jury, points out to him the error, informs him how it can be corrected, and delivers it to him in order that it may be thus corrected. The foreman then takes it to the grand jury room, and there in the presence and with the assent of his fellow jurors makes the necessary correction, and on a subsequent occasion the paper thus amended is returned in the usual way. The preliminary examination thus given by the Judge to a bill of indictment is usually confined to ascertaining whether it bears the proper endorsement of " True Bill," signed by the foreman. The body of the indict-

ment is rarely looked at, because the Judge assumes that this has been properly framed by the State's Attorney, and such a defect as existed in the body of this indictment is a very unusual one. If the Judge to whom it was delivered by the foreman of the grand jury had opened it and discovered that the blanks had not been properly filled up, it would have been his duty, instead of handing it down to the clerk, to have returned it to the foreman for correction in the mode above indicated. The defect, however, was not discovered until the next day, and after the indictment had been delivered to the clerk and filed by him. In this state of case, no doubt the more regular, formal, and safer course would have been for the State's Attorney to have had this indictment quashed, and to have framed a *new one* and submitted it to the grand jury for their approval. 1 *Chitty's Cr. Law,* 325; 2 *Hale's Pleas of the Crown,* 162; *Bacon's Abr.* (*Indictment D*). But this was not done, and the public and formal proceeding set out in the statement made by the learned Judge of the Court below was adopted in lieu thereof. The grand jury came into Court while it was in open session, and through their foreman made a public and formal request that the indictment should be returned to them for the purpose of properly filling up the blanks left in it, and the Court thereupon gave a formal and express direction to the clerk to return the indictment to the foreman for this purpose. The indictment was then placed in the hands of the foreman in the presence of his fellow jurors and in open Court. The grand jury then retired, and on the same day returned the same bill with the blanks properly filled up, and bearing the same endorsement of "True Bill," signed by the foreman, and delivered it to the Court, and the Judge thereupon handed it to the clerk. All that was thus done was done in open Court, and with the Court's express sanction and direction. It was the duty of the clerk to have entered these proceedings upon

the minutes and as part of the record and proceedings of the Court on the day, (21st of November, 1884,) on which they occurred, and if he failed to do so it was competent for the Court to have had the minutes of its proceedings corrected in this respect. What the grand jury thus did was, in our opinion, substantially the same thing as finding and returning a new indictment in the form in which the old indictment thus corrected stood. At all events we discover in these proceedings no such defect as would justify the Court in pronouncing the indictment thus treated and acted upon by the grand jury, a nullity, and we should therefore sustain it if the question were before us for decision.

*Writ of Error dismissed.*

(Decided 10th March, 1885.)