## FREDERICK HOOKER *vs.* THE STATE OF MARYLAND.

*Fact of the Finding of an Indictment Cannot be Impeached by Testimony of Grand Juror—Record Removed for Trial to Another Court— Arson—Evidence of Experiment Showing How Fire Might Have Been Caused—Competency of Evidence to Show Motive for Crime.*

Upon trial of a motion to quash an indictment the members of the grand jury which found it cannot be allowed to testify that they did or did not vote for the indictment or that the same was or was not found to be a true bill by a majority of the jury.

An indictment was returned by the grand jury of one county and the case was subsequently removed for trial to another county where a motion was made to quash the same on the ground that a majority of the

grand jury had not concurred in finding the indictment. *Held*, that the validity of the return of the indictment as a true bill cannot be impeached in the Court to which the record had been removed.

Defendant was indicted for arson in setting fire to his shop. At the trial the evidence showed that the fire was discovered about 3 o'clock A. M. under the counter of the shop, which the defendant had left at 11 o'clock previously on that night. A policeman testified that about 11.30 o'clock that evening, when he was across the street in front of this shop, he saw in it through a transom a dim light which appeared to be in a smoky room. The theory of the prosecution was that the defendant had placed a candle on the floor of his shop near inflammable material, and in this way caused the fire, and the evidence of the policeman was offered to show that shortly before the trial he had placed at night a lighted candle in a box over the spot where the fire was discovered, and that from the opposite side of the street the light of the candle appeared to be the same kind of light that he had seen in the shop on the night of the fire. *Held*, that since there was no evidence that the defendant had used candles in his store, or that the remains of any were found there, or that the fire had been caused in such manner, the evidence of this experiment is not admissible.

Upon the trial of an indictment for arson, evidence that a month previous to the fire, which had injured his stock in trade, the defendant had stated under oath in applying for a trader's license, that the value of his stock did not exceed $4,000, is admissible to show a motive for the commission of the crime in connection with evidence that his policies of fire insurance on the property amounted to $14,000.

Appeal from the Circuit Court for Howard County (REVELL and THOMAS, JJ.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, SCHMUCKER and JONES, JJ.

*Edgar H. Gans* and *W. Calvin Chesnut* (with whom were *B. H. Haman* and *Stuart S. Janney* on the brief), for the appellant.

Whatever may be the rule in other States, it has been definitely settled in Maryland that a grand juror is competent and will be allowed to testify concerning proceedings in the jury room *whenever the ends of justice will be subserved thereby.* The rule imposing secrecy on a grand juror is one of public policy only to subserve the ends of justice, and yields where it would be to defeat justice to seal his lips. *Izer* v. *State*, 77 Md. 110;

*Elbin* v. *Wilson*, 33 Md. 135; *Owens* v. *Owens*, 81 Md. 518; *Kirk* v *Garrett*, 84 Md. 383.   It needs no argument to show that if the facts alleged in the motion to quash are true, it will be promoting the ends of justice to allow testimony concerning the same by the grand juror.

If the indictment as returned was not by the affirmative action of at least twelve members of the grand jury, it was void and should have been quashed.   About the only way to prove the matter in reference to this was to examine the members of the grand jury.   It it true that the indictment bore the endorsement on its back "true bill," which *prima facie* imports that it is the action of a majority of the grand jury, but we submit that such endorsement is not *conclusive*, but may be rebutted by proper proof.   We have examined a great number of authorities bearing on this question, and while there are undoubtedly some which hold that the record cannot be contradicted, the weight of authority is that the record is *prima facie* only.   It is stated in *Greenleaf on Evidence* as an uncontrovertible proposition of law, that grand jurors may be asked whether twelve of their number actually concurred in the finding of a bill, the certificate of the foreman not being conclusive evidence of thas fact.   1 *Greenleaf Evidence*, sec. 251. See also *Laws case*, 4 Greenl. 439; *People* v. *Shattuck*, 6 Abb. N. C. 33; *Com.* v. *Hill*, 11 Cush. 137; *Com.* v. *Mead*, 78 Mass. 171; *Territory* v. *Hart*, 7 Mon. 52; *Sporrenberger* v. *State*, 53 Ala. 481; *State* v. *Horton*, 63 N. C. 595.

The following cases also sustain the contention that the testimony of the grand jurors was admissible to support the allegations of the motion to quash.   *Commonwealth* v. *Smith*, 9 Mass. 107; *State* v. *Symonds*, 36 Me. 128–132; *State* v. *Benner*, 64 Me. 267; *Shattuck* v. *State*, 11 Ind. 473–8; *State* v. *Horton*, 63 N. Caro. 595; *U. S.* v. *Terry*, 39 Fed. 355; *Burnham* v. *Hatfield*, 5 Blackf. 21.

It was the theory of the State that the fire had been caused by Hooker lighting a wax candle and putting the same under the counter in the store in close proximity to the lot of kindling and excelsior, etc., and then leaving the same, and locking up

the store and going home. The State contended that by so doing, after burning a number of hours, the candle ignited the. excelsior and wood, and thereby caused the fire. There was no contention that either Hooker or Fehl had returned to the store between their hour of leaving, about 11 o'clock, and the discovery of the fire. It was necessary, therefore, to present some theory to the jury showing the incendiary origin of the fire, and explaining how the fire could have been started by Hooker at 11 o'clock at night, and not be discovered until 3 o'clock. This theory of the State was set out in the fifth count of the indictment, which was eliminated by the demurrer, and it was also fully stated by Mr. Worthington, the State's Attorney, during the progress of the case. The whole. case of the State was built on it; it was the most important con-tention. No candle, or piece of candle, was found on the premises after the fire, nor was it shown that Hooker ever had any candles in the store. It was, therefore, very important for the State's contention to get some evidence in reference to the candle before the jury.

The effect of Holbrunner's testimony in reference to his ex-periment with a candle was that by placing a candle in the room under a counter about where the fire occurred, and then going across the street to about the same place where he had noticed the reflection on the walls of the room the night before the fire, he noticed the same sort of reflection as that seen by him before the fire.

It is elementary law that for an experiment to be admissible, it must be based on conditions similar to those existing in the case on trial, and the failure to prove similarity of conditions is alone sufficient reason why the evidence should have been rejected. *Keyser* v. *State*, 95 Md. 96–99; *Richardson* v. *State*, 90 Md. 109; *Libby* v. *Libby*, 146 Ill. 540–550; *Leonard* v. *So. Pac. Ry. Co.*, 21 Or. 555, annotated in 15 L. R. A. 221–6; *L. E. & W. R. R. Co.* v. *Mugg*, 132 Ind. 168–174.

We do not learn from the record whether or not there was gas or electric light in the house, either of which might have caused a similar effect, and there is no evidence that a candle

was in the house at all.    Holbrunner did not make an experiment which tended to show that *nothing but a candle could have reproduced this light.*    He made an experiment with a candle, and the effect of his experiment was simply to show that the reflected light which he had observed on the wall, *could be reproduced by a candle*, placed as it was placed by him. For the result of this experiment to have had any logical weight or probative force, and therefore, any relevancy to the case, it was necessary for Holbrunner to have gone further and to shown that such a light could not have been reproduced by a lamp, or other agency.

There is absolutely nothing in the case to show that the fire was started or the light caused by the circumstances and conditions and in the manner adopted by the witness Holbrunner in making the experiment.    Under such circumstances this Court has ruled similar evidence clearly inadmissible.    *Keyser* v. *State*, 95 Md. 98.

In the seventh exception, the Court permitted evidence to be given by the State of the issuance of a trader's license to Hooker, authorizing him to carry a stock in trade not to exceed $4,000 in value, and in the eighth exception, the State was permitted to give evidence showing the amount of insurance obtained by Hooker on his stock in trade.    These two points of evidence were, we understand, permitted for the purpose of showing a motive to exist on Hooker's part to burn his stock in trade.    It is true that evidence of motive is generally held admissible in criminal cases.    It is obvious, however, that no motive would exist in the mind of a man inducing him to burn up his property, unless it was over-insured. In other words, evidence of motive by showing the amount of insurance ought always to be coupled with further proof tending to show insurance to an aggregate amount in excess of the value of the property insured.    *Statz* v. *State*, 104 Ind. 359; *People* v. *Devine*, 22 Pac. Rep. 969; *Commonwealth* v. *Hudson*, 97 Mass. 565; *Commonwealth* v. *McCarter*, 119 Mass. 254; *Shepherd* v. *People*, 19 N. Y. 537; *State* v. *Cahn*, 9 Nev. 179.    We do not think the record shows over-insur-

ance. The mere fact that when Hooker first opened his store he did so under a license authorizing him to carry a stock in trade of $4,000 is not inconsistent with his thereafter increasing his stock in trade. This would seem to be what actually was done. At first, he took out insurance for only $4,000, and this was increased later to $14,000. There was nothing in the State's case to show that the fair value of Hooker's stock in trade was not at least $14,000 at time of the fire.

*Glenn H. Worthington* (with whom was *Isidor Rayner, Attorney-General*, on the brief), for the appellee.

Jurors are not allowed themselves to impeach their own findings. 1 *Bish. Cr. Law*, sec. 874; *Bradford* v. *State*, 15 Ind. 347; *Ford* v. *State*, 17 Md. 514; *Bosley* v. *Ches. Ins. Co.*, 3 G. & J. 450. This rule, familiar as to the petit jury, extends also to the grand jury with perhaps stronger force. 1 *Bish. Crim. Pro.*, 857, 858, 874, 1270. *C.* v. *Skeggs*, 3 Bush. 19; *Rea* v. *Marsh*, 6 A. & E. 236; *State* v. *Grady*, 84 Mo. 220; *People* v. *Hulbut*, 4 Denio. 133; *Wharton Crim. Pro.*, pg. 403, sec. 509; *Owens* v. *Owens*, 81 Md. 522–3.

In *Izer's case*, 77 Md. 110, and in *Kirk* v. *Garret*, 84 Md. 385, 412, a grand juror was allowed to testify in furtherance of justice, but the testimony in these cases in no wise impeached the action of the grand jury. When an indictment is handed in to the clerk of the Court by the foreman of the grand jury in the usual formal manner and it is filed and proper entries made on the docket, it becomes a part of the records of the Court and imports absolute verity. *Byers* v. *State*, 63 Md. 207. When so recorded it cannot be invalidated in another Court and in another jurisdiction by the individuals, who, as an organized body of grand jurors, acting in their official capacity, found the indictment and in due form of law presented it to the Court by whom they were sworn and charged. *Gitchell* v. *People*, 146 Ill. 175; *State* v. *Merriweather*, 46 Ia. 88.

Experiments have been admitted in evidence in a number of cases because "similar effects may be reasonably inferred from

like causes. *Richardson* v. *State*, 90 Md. 119; *Chicago & R. R. Co.* v. *Champion*, 32 N. E. Rep. 874; *Smith* v. *State*, 2 Ohio St. 511; *Keyser* v. *State*, 95 Md. 98; *R. R. Co.* v. *Gantt*, 39 Md. 115; *Piggott* v. *R. R. Co.*, 54 E. C. L. 228.

BOYD, J., delivered the opinion of the Court.

The appellant was indicted in the Circuit Court for Frederick County for arson and unlawfully burning a house in Frederick City. He filed a suggestion for removal and the record of proceedings was transmitted for trial to the Circuit Court for Howard County. After the case was removed he made a motion to quash the indictment, which was overruled, and he then demurred to each of the eight counts. The Court sustained the demurrer to the last four counts but overruled it as to the others, and the traverser was convicted on the fourth count, which charged the common law offense of unlawfully, wilfully and maliciously setting fire to and burning a house of the traverser, contiguous to and adjoining a certain dwelling house, etc. The demurrer to that count was not pressed in this Court and the questions to be first considered are embraced in the first, second and third bills of exception, which relate to the motion to quash.

1. Eleven reasons were assigned in the motion, and an amendment thereto, but it will not be necessary to discuss all of them. The rulings complained of and presented by these exceptions relate to the refusal of the Court to permit the traverser to ask members of the grand jury certain questions tending to impeach the indictment. The three apparently most relied on were as follows: "2. Examine the indictment in this case, which I now hand you, and state whether or not the same was ever read, presented to or voted on by your grand jury." "4. State whether or not the returning of said indictment 'true bill' was in fact a mistake and an error on the part of the foreman." "10. State whether or not in the return of the said indictment 'true bill' the grand jury, or you as one of them, have been, or were deceived." Those and similar questions were propounded to a member of the grand

jury and the record shows that nineteen other members of that body had been summoned and were in Court to be examined, but on objection by the State the witness was not permitted to answer any of the questions.

Just how far it is competent for grand jurors to testify concerning proceedings before them has given Courts much concern and has been variously decided. It is now generally conceded, and in this State definitely determined, that notwithstanding the oath of secrecy taken by a grand juror he may be required to disclose in Court some things that transpired in the jury room. As was said in *Izer* v. *State*, 77 Md. 110, " The oath of the grand juror undoubtedly precludes him for all time from voluntarily, and of his own motion, or at his own instance, divulging the counsels of the State, his fellows or his own ; but there is in the very nature of things a tacit condition implied that, in the furtherance of justice, the juror shall, in some instances, speak when the law, through its constituted tribunals, explicitly commands him to do so." It was held in that case that he could be required to disclose what a witnesss had testified to before the grand jury, on the trial of the witness for perjury, and also whether a particular person gave any evidence, or was examined at all before the grand jury. In *Owens* v. *Owens*, 81 Md. 518, it was said, " Cases occur in which it is essential to call grand jurors as witnesses, but the rule should not be extended beyond what is necessary for the purposes of justice, and it would be exceedingly dangerous, in most cases, to permit them to explain or assign reasons for their actions." There it was held that a foreman of a grand jury, who had testified in a case for malicious prosecution that the charge against the plaintiff had been dismissed, should not be permitted to say *why* it was dismissed. In *Kirk* v. *Garrett*, 84 Md. 383, a grand juror was permitted to contradict a witness in Court by proving that he had testified differently before the grand jury. But while it is now settled in this State that they can testify under such circumstances, and for such purposes, as we have stated, this Court has not heretofore been

called upon to determine whether they should be permitted
to testify to such matters as are presented by this record, and
the decisions of other Courts are very conflicting.    On some
points the line between the cases is sharply and distinctly
drawn, and they cannot be reconciled.    After citing authori-
ties showing the conflicting views of other Courts, it was
said in *Elbin* v. *Wilson*, 33 Md. 144, "Be this, however, as it
may, all the authorities concur in saying that the juror will
not be permitted to state how any member voted, or the
opinion expressed by his fellows or himself, or the individual
action of any juror in regard to the subject-matter before
them."    Cases from other States are cited in 17 *Am. and Eng.
Ency. of Law* (2d ed.) 1295, to sustain a similar statement,
but on the next page of that work many cases are cited
in which it was held that grand jurors may testify as to
whether the requisite number concurred in finding an indict-
ment, and quite as many are cited on the other side of the
question, where it was held that they could not so testify.    In
this State at least twelve of the grand jurors must concur in
the finding of the indictment, and hence there is great force
in the statement by Justice PREBLE in *Low's case*, 4 Green-
leaf 452, (which seems to be the leading case in this country
in favor of admitting the testimony), where he said, "Now,
for Courts to be solemnly resolving, and legal writers of the
first eminence to be gravely stating, as matter of settled law,
that if twelve at least of the grand jury do not concur in find-
ing the bill the indictment is void and erroneous, seems to
me to be very idle, to say the least of it, if the party inter-
ested is not permitted to suggest the fact, and the Courts are
precluded from inquiring into the subject, or allowing the
party to avail himself of the error."    But there is much to
be said on the other side.    We have seen that it is settled in
this State that jurors will not be permitted to state how any
member voted, and as was said in *Gitchell* v. *People*, 146 Ill.
183, "If grand jurors are allowed to state that twelve of their
number did or did not concur in finding the indictment, it is
difficult to see how they can avoid disobeying the injunction,

not to state ' how any member of the jury voted,' because the accuracy of the statement as to how many did or did not concur could hardly be tested by cross-examination, or otherwise, without revealing what particular jurors voted for the indictment, or what ones voted against it." It certainly would not do to permit grand jurors to simply testify that twelve did or did not vote for an indictment, without testing the accuracy of such statement by cross-examination, if the question is to be inquired into at all, and it would seem to be almost, if not quite impossible, in most cases, to make a thorough investigation without disclosing who did vote to indict. Grand jurors do not always understand the meaning of technical terms in an indictment, and if they are to be permitted to simply swear that they did not vote for an indictment, it might be because they did not understand the language set out in the indictment, which differed from what they supposed would be necessary. Take, for example, the ordinary count for assault and battery. A layman might honestly think he had not concurred in an indictment that contained such allegations as are usually found in such a count, when the testimony only showed a technical assault, without any battery. Or, if the State's Attorney includes counts for different offenses which may be joined, such as larceny and receiving stolen goods, burglary or robbery and larceny; grand jurors might truthfully say that they did not understand the accused was indicted for some such crime included in the indictment, when in fact it was inserted there by the State's Attorney to meet the testimony as it might be developed on the witness stand.

It is also urged with great force that to deny the accused this privilege may require him to be tried under an indictment which is illegal and in truth no indictment. But it is difficult to understand how an accused can *legally* acquire the information that less than twelve voted to indict. No grand juror can so inform him without violating his oath of secrecy, and when the vote is taken no one other than the grand jurors ought to be in the jury room. Nothing could be more detri-

mental to the proper administration of justice than to sanction a practice that would thus encourage parties who have been indicted to approach grand jurors to ascertain whether they took part in finding some particular indictment. Any grand juror who had a proper regard for his oath and his duty would refuse to give any information on the subject, and therefore we say we do not understand how an accused can legally ascertain that less than twelve voted to find an indictment, unless it come in some way through the Court, of which we will speak presently. Under the old English practice, when it was necessary to state in the caption of every indictment that it was found on the oath of twelve men, a failure to so state would present the question, but when, as is the case under our practice, no one but a member of the grand jury knows whether the requisite number did vote to indict, it would have the tendency to encourage perjury, bribery and a contempt of judicial proceedings to permit grand jurors to testify to such facts. If it be said that every defendant should be permitted to interrogate the grand jurors as to whether twelve or more of them concurred in finding the indictment against him before he should be required to plead, that, to say the least, would involve unnecessary delay and useless expense. Under our system, there is but little danger of injustice being done through the mistake or misconduct of the foreman. We have twenty-three grand jurors and the practice is to have one or more members of the jury to act as clerks, who keep records of the proceedings. The States Attorneys are permitted to go into the jury room, and they are presumably familiar with the action of the grand juries on indictments prepared by them or under their direction. The indictments are returned to the Court in the presence of at least a majority of the jury and there is but little, if any, opportunity for mistake or misconduct on the part of the foreman, without being speedily detected by the State's Attorney or some of the grand jurors. If there be such mistake or misconduct, it may be that the jury, through its foreman or a majority of the jurors, should be allowed to so report to the Court where the indictment is

found, and if that be done it would be the duty of the Court to permit them to correct the error at any time during the term, before the trial, if the Court be satisfied that a material error had been made, but we cannot sanction the practice adopted in some jurisdictions, and contended for in this case, of permitting the accused to call the members of the grand jury to impeach indictments returned by them, after they have become and continue to be part of the records of the Court. Although the contrary view has been adopted by some Courts of high standing, there are many authorities which hold the testimony of grand jurors for such purposes to be inadmissible. Among them are *Gitchell* v. *People*, 146 Ill. 175; *State* v. *Baker*, 20 Mo. 338; *State* v. *Grady*, 84 Mo. 220; *State* v. *Hamlin*, 47 Conn. 114; *State* v. *Beebe*, 17 Minn. 241; *Simms* v. *State*, 60 Ga. 145; *Creek* v. *State*, 24 Ind. 151; *State* v. *Davis*, 41 Iowa, 311. In *U. S.* v. *Tarry*, 39 Fed. Rep. 355, the opinion shows how doubtful such practice is deemed to be.

We have thus considered at some length the question without reference to the fact that this indictment was found in Frederick County, and the motion to quash was made in Howard, after the record had been removed to the Circuit Court for that county. It cannot be denied that when an indictment is returned to the Court, delivered to the clerk, filed by him and proper entries made, it then becomes part of the records of that Court, *Byers* v. *State*, 63 Md. 211. "The record of a Court as to the impaneling and proceedings of a grand jury, and the finding of an indictment, like other records, proves itself, and is of such validity that, as a general rule, no fact can be averred against it." 17 *Am. & Eng. Ency. of Law* (2 ed.), 1301, and cases cited. In *Low's case, supra,* it was conceded that the endorsement of the indictment by the foreman, the presentation of it to the Court, and putting it on file, makes it a record, "and that it has all the legal verity, which belongs to that species of evidence; and I admit that, according to our practice, it proves the fact that twelve or more agreed to the bill." The doctrine there adopted was that it was the right and duty of the Court to correct the error on finding it, but

the Court referred to was the one where the indictment was
found.  Both of the Judges who delivered opinions took
occasion to say that the proof offered to so correct the record
must be very clear—one of them said it must be made to
appear, "beyond every reasonable doubt that an indictment,
apparently legal and formal, had not in fact the sanctions which
the law and the Constitution required," and yet, relying on
that case and others that have followed it, the Circuit Court
for *Howard* County was asked to declare the record of the
Circuit Court for for *Frederick* County false and erroneous.
That would not be in accord with the principle of law that
requires one Court to respect the records of another, which
had acted within its jurisdiction, and if in any instance an
indictment is to be impeached by grand jurors, it should at
least be done in the Court where it was found.  The provision
in the Constitution that the Court to which the record is trans-
mitted shall hear and determine the same in like manner as if
such indictment had been originally instituted therein, ought
not to be construed to give the Court to which the case is
removed such power over the record of the other Court as is
sought in this case, and we are of the opinion that even if it
be conceded that the Circuit Court for Frederick County
could properly have inquired into the matters attempted to be
raised by the motion to quash, the Court for Howard County
was right in refusing to do so, and there was no error in the
rulings embraced in the first, second and third bills of excep-
tion.

2. The fourth, fifth, sixth and ninth bills of exception pre-
sent rulings on the offer of the State to prove an experiment
made by a policeman to show that a candle placed about
where the fire occurred produced a light of the same sort he
had noticed on the night of the fire.  The traverser rented the
storeroom on November 17th, 1902, in which he had watches
and other jewelry for sale.  The owners occupied as a dwell-
ing the house over the store.  There was a door to the store
opening on the street, and one in the rear opening into the
yard.  There was a cellar under the house, which could be

entered from the front pavement, and from the yard. There was a counter running the length of the east side of the storeroom, with sufficient space between it and the wall to pass. The State offered evidence tending to prove that the defendant and his manager at first slept in the storeroom, but they did not stay there the Sunday night preceding, or the night of the fire, which occurred about 3 o'clock A. M. on December 23rd, 1902—they having left about 11 o'clock that night to go to a boarding house where they were then sleeping. When the fire was discovered it was found to be under and about eight feet from the northern end of the counter. It had burned through the floor into the cellar, making a hole of about 10 by 20 inches. On the counter there were two show cases and the one that was over the fire was burned through and had watches in it, some of which were found in the cellar. At the place where the fire was, there were found some boards, excelsior, and other inflammable material. There was no evidence to show that the traverser or his manager was at the storeroom after 11 o'clock that night, and so far as the record shows, they were not there until the next morning, when he claims to have first discovered that it had been on fire. Officer Holbrunner of the police force of Frederick testified that on the night of the fire he was called to a saloon opposite this store to arrest a party, about twenty-five minutes of 12 o'clock, that he glanced across the street towards the store and it was dark, excepting a light which he saw through the transom. There were curtains on the windows and the front door, which were down. He said it was "a dim light, it looked like it was in a smokey room—say, for instance, that you would hang an electric light up there and look back at it, that is the way it looked, it looked dark right against the ceiling and the side wall * * was about from 4 to 8 feet on the ceiling; some of it was against the wall on the east side of the room; it came down the wall; witness could only see it on a level with the bottom of the transom." He was about eighty feet from the store and at the time did not suspect there was anything wrong and only gave the light a casual glance.

The witness was called upon a few nights before the trial, in April, 1903, to experiment with a candle. He placed the candle in a box which he put over the spot where the fire was, under the counter then there, put another box behind the counter to represent a platform that the salesman was supposed to use, lit the candle, had the other lights put out, and went to the other side of the street where he was when he saw the light the night of the fire, and testified in regard to it that "It made the very same kind of a light that I discovered on the night of the fire." We will not stop to critically compare the conditions at the time of experiment with those the night of the fire, although in passing it might be said that it is at least doubtful if they were sufficiently similar to make a fair test, but assuming that they were, ought this testimony to have been admitted? There was no evidence that the traverser or his manager ever used or had a candle in that room. No candle, or any indication of one, was found there when the fire was discovered, and the testimony of the officer on that subject simply showed that such a light as he saw the night of the fire might have been made by a lighted candle. It is just as true that it might have been made with some other kind of light—indeed the witness said "it looked like it was in a smoky room—say for instance that you would hang an electric light up there aud look back at it." The object of the testimony is shown by the brief filed on the part of the State, in which it is said "the evidence was not intended to rebut or contradict any fact already testified to, but to tend to establish a fact which, according to the theory on which the case was tried was believe to exist on the night of the fire, to wit; the existence of a lighted candle under the counter." That theory, as we have already intimated, is not based on any direct proof in the case, but the counsel for the State were permitted to undertake to sustain a theory they had as to how the fire was started by showing, by an experiment that it was possible. It is well known that fires sometimes occur by reason of improper insulation of wires for electric lights, but could it be pretended that the defendant could have introduced evidence of an ex-

.periment to show that an electric wire, coming in contact with such inflammable material as was found under this counter, might have started the fire, without offering some evidence that there was a wire there that night? Experiments are oftentimes valuable and perhaps sometimes necessary, and it is very difficult to announce rules that must govern trial courts as to when they should be allowed, as that may depend upon circumstances, but to permit the State's officer in a criminal case to offer evidence of experiments to sustain a theory he may have as to how the act in question may have occurred, when. there is not a particle of proof to show that such instrument as is to be experimented with was used, would be exceedingly dangerous. The introduction of such testimony would be calculated to give it undue prominence in the minds of the jury, and might do great injustice to the prisoner. If this policeman had sworn that he had seen a candle burning there, or there had been some evidence that the remains or traces of one had been found there after the fire was discovered, a different question would be presented, but we find nothing in the record to justify the admission of such testimony, and although some discretion must be given to the trial court in such matters, it is so apparent that this evidence not only might have, but in all probability did prejudice the prisoner, that we feel compelled to hold that it was reversible error to admit it. There is nothing in the cases decided by this Court, cited by the. State, to authorize the admission of such testimony under the circumstances of this case, and we have not found any elsewhere. In *People* v. *Levine*, 85 Cal. 39, an experiment with candles was permitted in an arson case, but there the wall and floor were found to be saturated with coal oil, and other combustible material, and candles were found burning and so situated as to ignite the oil, and so we might distinguish other cases we have examined from the one before us, if it were necessary.

3. We find no error in the rulings presented by the seventh and eighth bills of exception. On November 22nd, 1902, the traverser took out a license to carry in trade a stock not ex-

ceeding four thousand dollars in busy seasons. Under our statute an applicant for a trader's license is required to state under oath "the amount of said applicant's stock of goods, wares and merchandise generally kept on hand by him or the concern in which he is engaged, at the principal season of sale ; or if said applicant shall not have previously engaged in such trade or business, the amount of such stock he expects to keep as aforesaid." The amount to be paid by him for such license is regulated by such statement. The appellant first took out insurance for four thousand dollars and then for ten thousand additional, and one month after the license was obtained the fire occurred. It was competent for the State to show a motive for the traverser to burn this property, and although he claimed that his stock was worth over seventeen thousand dollars, this evidence in reference to the license, so recently taken out, very materially reflected upon the real value of the stock, and hence furnished evidence of a motive for him to set fire to the store, if the value was such as his application for license tended to show. It is true that the manager of the traverser got the license, but, a few days before, the traverser himself had been to see the deputy clerk who issued it, to inquire as to the cost of the license, and told the deputy that his manager would take it out.

For error in admitting the evidence of the experiment made by the police officer, and embraced in the fourth, fifth and sixth bills of exception the judgment must be reversed. We do not mention the ninth, which embraces an exception to a refusal to strike out the testimony of the policeman, as it is unnecessary to do so.

*Judgment reversed with costs and new trial awarded.*

(Decided December 4th, 1903.)