Elbin and Dean *vs.* Wilson.

(Decided 30th June, 1870.)

BARTOL, C. J., dissented.

---

HENRY B. ELBIN and MATHIAS G. DEAN *vs.* AMON WILSON.

*Qualification of Jurors—Admissibility of Evidence— Declaration of a party as Evidence—Competency of Jurors as Witnesses — Re-butting Evidence — Evidence of Malice—Exemplary Damages.*

The formation or expression of an opinion that the defendants, as Judges of Election, "ought to have received the votes of all registered persons, without further question," does not disqualify a person from acting as juror in a suit against the Judges for damages, for not receiving the vote of one who was registered.

In an action for damages against Judges of Election for corruptly refusing the vote of the plaintiff who was registered, the fact that the defendants knew that he differed from them in his political sentiments, is admissible as an element of proof to be considered by the jury, together with other facts, in determining how far they were influenced by bias, prejudice or corrupt motives in rejecting his vote.

But the declarations of the plaintiff made to other parties, tending to prove that he came within the disqualifying clause of the Constitution of 1864, and which were unknown to the defendants when they rejected his vote, are not admissible as evidence to exempt them from liability.

A witness testifying in regard to conversations had with a party, must state either the language used, or the substance of it. The *impression* left upon his mind by the conversations is not evidence.

A grand juror cannot be required to state what efforts he made to procure an indictment against a person, what opinions were expressed by his fellows or·himself, or what was the action of any juror in regard to the subject of inquiry before them.

A Judge of Election, sued by a person whose vote he had refused to receive, testified that he had rejected the plaintiff's vote because of his known disloyal sentiments, and that in doing so he was not governed by any bias or prejudice against the plaintiff. HELD:

That to rebut this evidence and to show malice on the part of the defendant, it was competent for the plaintiff to prove that the defendant, as register, had registered a person as a voter, who at the time declared the same disloyal sentiments, for the expression of which the defendant claimed to have rejected the plaintiff's vote.

If a registered voter tenders his vote at an election, and the Judges wilfully,·corruptly and fraudulently refuse to receive it, he is entitled to recover in an action against them, such· exemplary damages as the jury may consider proper under the circumstances.

APPEAL from the Circuit Court for Allegany County.

This action was brought by the appellee against the appellants and one John Fletcher, as Judges of Election, at the November Election, 1866, in Election District No. 9, of Allegany County, to recover damages for refusing his vote, he being a registered voter under the Act of 1865, ch. 174. Fletcher died before the trial.

*First Exception:* Before going into the trial the appellants challenged certain of the jurors, upon the ground that "they had formed or expressed an opinion that the defendants, as Judges of Election, ought to have received the votes of all registered persons without further question." The plaintiff demurred and the Court sustained the demurrer. The defendants excepted.

*Second Exception:* At the trial the plaintiff proved he was a registered and qualified voter, well known to the defendants, and that he offered to vote in November, 1866, and that they refused to let him vote, and that they had refused his vote in 1864, and declared he should never vote; and that Elbin,

being also registrar in 1865, had refused to register him. The plaintiff then asked the witness Rice if the plaintiff was of opposite politics to the defendants, and stated to the Court that by other evidence he would trace the knowledge of this fact home to the defendants at the time of the election in November, 1866, and prior thereto. The defendants objected but the Court overruled the objection and permitted the question to be answered by the witness, who stated that the plaintiff and defendants were of opposite politics. To this ruling of the Court the defendants excepted.

*Third Exception:* The defendants offered to ask the witness Twigg, on cross-examination, whether in any conversation with the plaintiff, prior to the election in November, 1866, the plaintiff ever said to him either that he had advised any person to enter the service of the Confederate States, or had aided any person so to enter, or whether he ever heard the plaintiff declare his adhesion to the Confederate States, or express a desire for the triumph of the arms of the Confederate States over the arms of the United States, or whether the plaintiff had ever told him that he had aided in sending letters addressed to parties engaged in armed hostility to the United States, within the lines of the armies of the Confederate States? To each and all of these questions the plaintiff objected, because the defendants did not proffer at the time to show that such declarations of the plaintiff to the witness, if made, were communicated to the defendants. The Court refused to allow any of the questions to be put to the witness, unless the defendants would offer to follow up such proposed evidence with evidence that such declarations, if made, were communicated to the defendants previous to the time of the alleged rejection of the plaintiff's vote. To this ruling the defendants excepted.

*Fourth Exception:* The defendants then proved by a witness that some time after the first battle of Bull Run the plaintiff, in speaking of that battle, said it went where it should have gone, or went where it belonged. The defendants then offered

to prove by the witness, that he had had several other conversations with the plaintiff during the war in relation to the war, and its conduct and causes, and that he did not remember the language used on such occasions, but that he could state it was such as convinced him that the plaintiff strongly sympathized with the rebellion, and he communicated his convictions to Mr. Elbin. The plaintiff objected, and the Court sustained the objection. The defendants excepted.

*Fifth Exception:* The defendants further proved by another witness that he had a conversation with the plaintiff, wherein he stated "I did say the rebels had a right to fire upon Fort Sumpter; I can speak my sentiments now; we have not got the guns and bayonets around." The plaintiff and witness were in the habit of running each other about politics, and in one of these conversations he knew the plaintiff made use of the language above stated. The defendants then asked the witness if he could remember the words made use of by the plaintiff in the conversations spoken of by him when they were running one another? To which he replied he could not remember the words. He was then asked if he could remember whether or not the plaintiff took the part of the Government of the United States or of the Confederate States in such conversations? To this the plaintiff objected, and the Court sustained the objection. The defendants excepted.

*Sixth Exception:* The plaintiff offered to prove by the defendant Elbin, on cross-examination, that he was a member of the grand jury in October, 1864; that he recollected having a conversation with the foreman about the plaintiff having committed perjury at the election in September, 1864; other witnesses were examined before the grand jury; did not recollect who examined them, whether he did or not; he gave the names of witnesses to the foreman to be summoned against the plaintiff. To this evidence as offered touching the proceedings of the witness before the grand jury, and what he said to the foreman, and what he did as a member of the grand jury, the defendants objected. The Court overruled the objec-

tions and permitted the evidence to go to the jury. The defendants excepted.

*Seventh Exception:* The plaintiff, to rebut the evidence offered on the part of the defendants, as to the course of proceedings by the registers in 1865, and to show malice on the part of the defendant Elbin against the plaintiff, offered to prove by a witness who was present at the office of registration in 1865, when a Mr. Tumlinson was before the registers, that Elbin asked him as one of the questions whether he endorsed the administration? And that he said he did not, as the witness thought; that then as he thought, Elbin asked him whether he gave any aid or comfort to the South? And he said he did not, because he had no opportunity. The witness was register in 1866, and found Tumlinson's name on the register when the books came into his hands, and that he voted in 1865. To this evidence the defendants objected, because it was an inquiry into a collateral matter, was irrelevant to the issue in the cause, and was not proper rebutting evidence. The Court overruled the objection, and permitted the evidence to go to the jury. The defendants excepted.

*Eighth Exception:* The plaintiff offered to prove by Mr. Tumlinson, that he was registered in 1865, by the registers in Flinstone district, Elbin, Hendrixon and Robinett; he was sworn by the registers; Mr. Elbin swore him; the oath that was administered bound him to answer certain questions, and among these questions, he was asked whether he had given aid or comfort to the south by word or deed? He replied, that he did not know that he had; that he had talked a good deal and did not know what he said, but he did not suppose that his talk would have any influence with anybody; as for giving them aid otherwise, he had had no chance. He was asked if he endorsed Lincoln's administration? He replied not all. Elbin then asked him what part he denounced? He told him then he denounced the whole, for he believed that anything that he had done inside of the Constitution was done with a bad motive, and he did not endorse any of it. Elbin

asked him if Maryland had seceded when the rest of the States did, what he would have done? He told him he would have gone with her, for he thought it was the duty of all the slave States to go together, for it was his opinion that if they had all gone together, the difficulty would have been settled between the sections without firing a gun. He was asked something about fighting, if he was forced to fight, where he would have fought? He told him the time had been when he would have fought south. He was asked if he knew any more men of the same opinion he was? He said he believed there were hundreds. Elbin then asked him to name one? He told him that the plaintiff would come as near as any man he could think of.

To this testimony the defendants objected, but the Court overruled the objection and allowed the evidence to go to the jury. The defendants excepted.

*Ninth Exception:* The plaintiff offered the following prayer:

If the jury shall believe from the evidence in the cause, that the defendants, with John Fletcher, were Judges of the Election held for District No. 9, in Allegany county, on the Tuesday next after the 1st Monday of November, in the year of 1866, and that the plaintiff was in said district a registered voter at that election, and tendered his vote at said election, and that the defendants wilfully, fraudulently and corruptly refused to receive and allow the plaintiff to vote at said election, then the plaintiff is entitled to recover whatever damages the jury shall believe he sustained from said refusal to permit him to vote, and that the jury are not limited by the actual amount of the pecuniary damages sustained by him, but may give exemplary damages for the injured feelings and mortification of the plaintiff, and the degradation of his character, by refusing to permit him to vote.

And the defendants asked the following instructions:

1st. That though the jury shall find that the name of the plaintiff was entered upon the book of registration for the Flinstone district, in Allegany county, as a qualified voter,

prior to the election of November, 1866, he is not entitled to recover, if they shall believe that the defendants honestly thought that he was not entitled to vote under the Constitution of 1864, and the laws then in force, and that as Judges of Election, it was their duty to reject his vote, and that they refused his vote for that reason, even though such opinions may have been erroneous, either as to the law or the facts touching the plaintiff's right to vote, or however erroneous their opinions may have been of their own powers and duties.

2d. That if the jury shall find that the defendants, acting upon their own knowledge, or upon conversations between themselves and the plaintiff, refused to permit the plaintiff to vote, because they thought him to come within one of the disqualifying clauses of the Constitution of 1864, and that they believed they had a right so to exclude him from voting and that it was their duty as Judges of Election to do so, and that for this reason they did so exclude him, the plaintiff is not entitled to recover, however much the defendants may have mistaken their duties or powers; provided they were actuated by no fraudulent or malicious motive in the premises.    (This proviso was added by the Court.)

3d. That there is no sufficient evidence in this cause to show that the plaintiff offered at the November election, 1866, to ballot for Alfred Spates, for Senator, and for Wm. Devecmon, Wm. A. Brydon, John McElfish, Patrick Hamill, George W. McCullough, for Delegates, as set forth in the first count in the declaration of the plaintiffs in this case.

4th. That there is no sufficient evidence in this cause, that the plaintiff offered a ballot for Senator and Delegates, as set forth in the second count of the declaration of the plaintiff in this case.

The Court granted the prayer of the plaintiff as also the first and third prayers of the defendants—they granted the second prayer of the defendants with the modification, and rejected their fourth prayer.   To this ruling of the Court in granting the prayer of the plaintiff, and refusing their second

prayer without the modification and adding the modification, and rejecting their fourth prayer, the defendants excepted, and the verdict and judgment being for the plaintiff they appealed.

The cause was submitted to BARTOL, C. J., STEWART, BRENT, MAULSBY, GRASON, MILLER and ROBINSON, J.

*George A. Pearre,* for the appellants.

*William Walsh,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This suit was brought by the appellee, a registered voter, under the Act of 1865, chapter 174, against the appellants, as Judges of Election, to recover damages for refusing his vote.

At the trial below, the appellants challenged, for cause, certain jurors, upon the ground, " that they had formed or expressed an opinion, that the defendants, as Judges of Election, ought to have received the votes of all registered persons without further question."

Whatever may be the rule elsewhere, it is the settled law of this State that, in order to sustain a challenge for cause upon this ground, it must appear that the juror has formed and expressed an opinion in regard to the merits of the case. *Edelen vs. Gough,* 8 *Gill,* 89. The office held by the appellants as Judges of Election, was one of a judicial nature, and in the discharge of its duties, they could not be held responsible for anything more than an honest and faithful exercise of their judgment. *Bernard vs. Hoffman,* 18 *Md.,* 479. The gist of the action, therefore, was, whether they had "*fraudulently, wilfully* or *corruptly*" denied the appellee his right to vote, and the mere formation or expression of opinion on the part of jurors that the Judges of Election ought to have received the votes of all registered persons without further ques-

tion, could not, in any just sense, be considered as an opinion in regard to the liability of the appellants in this action. They may have differed with the appellants as Judges of Election in regard to the manner in which they ought to have discharged their duty, without imputing to them fraudulent or corrupt motives. The appellee's demurer was, therefore, properly sustained by the Court.

We concur also with the ruling below on the second bill of exceptions. In all cases involving the fraudulent intent with which an act is done, any fact, however slight, if at all relevant to the issue, is admissible in evidence. *Waters vs. Duvall,* 1 *Md.,* 474; *Mayor and City Council of Balto. vs. Williams,* 6 *Md.,* 235; *Feigley vs. Feigley,* 7 *Md.,* 537. It is true, the mere fact that the appellants knew the appellee to be of different politics, may not in itself have been sufficient to have justified the inference of bias or prejudice on the part of the Judges of Election, or that they had corruptly rejected the vote of the appellee, yet, in an action of this kind, we think it was an element of proof properly submitted, together with other facts, to the consideration of the jury.

We find no error in excluding the evidence offered in the third bill of exceptions. The appellee had been registered as a voter in conformity with the Constitution and laws of this State, and his registration as such was evidence of his legal right to vote. *Constitution* 1864, *Art.* 1, *sec.* 2. Now, in an action against the appellants for corruptly depriving him of this right, they cannot, with a view to exempt them from liability, offer in evidence the declarations of the appellee made to other parties, tending to prove that he came within the disfranchising clause of the constitution of 1864. Besides, such declarations, if made, were unknown to the appellants at the time they rejected his vote, and could not, therefore, have had any influence upon their action.

The fourth and fifth bill of exceptions present substantially the same question. It is an unbending rule, that a witness testifying in regard to the declarations of a party, must state

either the language or the substance of what was said. It would be a dangerous innovation upon the well-established rules of evidence to allow him to give the *impressions* which the party's declarations made upon the mind of the witness.

In regard to the sixth bill of exceptions, it may be stated as a general rule, that public policy requires the preliminary examination before the Grand Jury, as to the guilt or innocence of a party, should be secretly conducted. The obvious reasons of the rule are, first, in order to secure the utmost freedom of deliberation on the part of the Grand Jury, and freedom of disclosure on the part of informers; secondly, to prevent the escape of the party should he know that proceedings were in train against him; and thirdly, to prevent the testimony before them from being contradicted at the trial before the traverse jury by subornation of perjury on the part of the accused. 1 *Greenleaf on Evid.*, *sec.* 252. When these purposes have been accomplished, how far and under what circumstances a Grand Juror may be permitted or required to disclose what transpired in the preliminary examination, are questions in regard to which the authorities are quite conflicting. *Commonwealth vs. Mead*, 12 *Gray*, 167; *Com. vs. Hill*, 11 *Cush.*, 137; *Freeman vs. Arkell*, 1 *Carr & P.*, 137; *Watson's Trial*, 32 *Howell's State Trials*, 107; *The King vs. Marsh*, 6 *Ad. & El.*, 236; *Low's Case*, 4 *Greenleaf*, 439; *State vs. Fassel*, 16 *Conn.*, 467; *Imlay vs. Rogers*, 2 *Halst.*, 347; *Roscoe's Crim. Ev.*, (*4th ed.*,) 19; *Whar. Crim. Law*, *sec.* 508.

Be this, however, as it may, all the authorities concur in saying that the juror will not be permitted to state how any member voted, or the opinion expressed by his fellows or himself, or the individual action of any juror in regard to the subject-matter before them. *Com. vs. Hill*, 11 *Cushing*, 137. To this extent at least, the free, impartial and unbiased administration of justice requires that the proceedings before Grand Juries should be kept secret. Any other rule would be destructive of that security and independence absolutely essential in the exercise of duties so responsible, and fatal

to a vigorous and energetic administration of criminal law. The Court, therefore, erred in requiring the witness, Elbin, to state whether, as Grand Juror, he did not endeavor to have the appellee indicted for perjury, or whether he did not furnish names of witnesses to the foreman to be summoned for that purpose.

The evidence of Millison and Tumlinson. in the seventh and eighth bills of exceptions, was properly admitted. Elbin, one of the appellants, had testified that he had refused to register the appellee in 1864, and, as one of the Judges of Election in 1866, had rejected his vote because of his known disloyal sentiments. That in so doing he was not governed by any bias or prejudice against the appellee. To rebut his evidence, and to show malice on the part of Elbin towards the appellee, it was competent for the latter to prove that Elbin, as register, had registered Tumlinson as a voter, who, at the time, declared the same disloyal sentiments, for the expression of which Elbin claims to have rejected the vote of the appellee.

In regard to the law of the case, we think it was fairly put to the jury by the plaintiff's prayer. If they believed that the plaintiff was a registered voter, and that the defendants wilfully, fraudulently and corruptly refused to receive his vote, he was entitled to recover, and the jury had the right to give such exemplary damages as they might think proper under the circumstances.

We find no objection to the modification by the Court of the defendants' second prayer. As offered, it was calculated to mislead the jury. By the amendment, the plaintiff's right to recover was based upon the fraudulent and corrupt denial of his vote by the appellants.

The Court was also right in rejecting the defendants' fourth prayer. The Constitution of the State designated the day for the election of State Senator and members of the House of Delegates, and on that day the appellee offered to vote, which was rejected by the appellants, as Judges of Election.

This proof, together with the other evidence upon this point, was legally sufficient to submit to the jury, from which they might infer that the appellee had offered to vote for State Senator and members of the House of Delegates, as set forth in the declaration.

The Court having erred in permitting the evidence in the sixth exception to be submitted to the jury, the judgment must be reversed.

*Judgment reversed and*
*new trial awarded.*

(Decided 1st July, 1870.)

STEWART, J., dissented as to the sixth exception.