THE STATE v. J. O. WILCOX.

*Grand Jury—Presentment—Residence—Irregularity in Drawing Jurors—Indictment.*

1. The fact that a member of the grand jury, which returned a true bill for perjury, was one of the petit jury that tried the issues in an action wherein it was charged the perjury was committed, is not good ground for abating or quashing the indictment. He was bound by his oath as a grand juror to communicate to his fellows the information he had acquired as a petit juror.

2. It is not only the right, but it is the duty of grand jurors, of their own motion, to originate prosecutions by making presentments of all violations of law which have come under the personal observation or knowledge of each juror, or of which they have credible information.

3. They have, however, no right to summon witnesses to appear before them, except by the permission of their foreman, or of the Solicitor, as prescribed by *The Code,* § 743.

4. A grand juror must be a resident of the county in which he is summoned to serve; but his qualification depends upon his *status* at the time of service—not the time his name was placed upon the jury list.

5. Where the County Commissioners, while drawing the jurors, laid aside the names of several persons, otherwise qualified, for the reason that they did not know whether they were residents of the county, and the jury-list was completed by the names of other duly qualified persons: *Held*, that, if there was any irregularity, it did not affect the action of the jurors so drawn and summoned.

This was an Indictment for Perjury, tried at Spring Term, 1889, of the Superior Court of ASHE County, before *Armfield, J.*

The defendant filed a plea in abatement, and the Solicitor agreed with his counsel as to the following facts:

" A plea in abatement having been interposed in the above-entitled case, because of the irregularity of the drawing of the grand jury which found the bill, and of the incompetency of two of said grand jurors, it is agreed upon the part of the Solicitor representing the State and the defendant that the facts are—

" 1. That one grand juror, to-wit, J. H. Jones, acted as a juror on the trial of the indictment wherein the alleged perjury was committed.

" 2. That the names of certain persons were drawn from the jury-box No. 1 by the County Commissioners on the first Monday of February, 1889, and said names—four or five in number—were laid aside upon the suggestion and supposition that some of said persons were absentees and non-residents of Ashe County at the time of said drawing, and that others were unknown in said county; that one of said jurors was a citizen of said Ashe County at the time his name was laid aside, but the fact of his residence in the county at the time was not known to the said Commissioners, and it was believed by said Commissioners that said person was a resident of the State of Tennessee.

" 3. That James Williams, one of the grand jurors at the time said jury was drawn, was a citizen of Ashe County and duly qualified to act as such juror, but afterwards, and before said inquisition, his home, and the territory on which he lived, was detached by an act of the Legislature from Ashe County and annexed to the county of Alleghany."

The Court sustained the plea and ordered that the indictment be quashed. The Solicitor for the State appealed.

*The Attorney General,* for the State.
Messrs. *J. F. Morphew* and *T. R. Purnell,* for the defendant.

AVERY, J —after stating the facts: The fact that a member of the grand jury that found the indictment was also one of the petit jury that tried the action in which, as it is charged, the perjury was committed, is not good ground for a plea in abatement. If the juror was not otherwise disqualified by law, his personal knowledge or opinion that there was probable cause for believing the defendant guilty of perjury, found from what occurred under his own observation when he was required to critically and closely scrutinize the evidence, made it his duty to disclose such peculiar knowledge to his fellows for their consideration and action. The grand jury are "returned to inquire of all offences in general in the county, determinal by the Court into which they are returned," and are sworn diligently to inquire, and true presentment to make, of all such matters and things as are given them in charge. It is the duty of the presiding judge to give them in charge the whole criminal law, whether general or local in its operation. Thompson & Merrimon on Juries, 605; *United States* v. *Hill,* 2 Brock, 156.

" The matters which, whether given in charge or of their own knowledge, are to be presented by the grand jury, are all offences committed within the county, the prosecution of

104—54

which is not barred by statute. To grand juries is committed the preservation of the peace of the county, the care of bringing to *light*. for examination, trial and punishment, all violence, outrage, indecency and terror, everything that may occasion danger, disturbance or dismay. Grand jurors are *watchmen*, stationed by the laws, to survey the conduct of their fellow citizens and inquire where and by whom public authority has been violated, or our Constitution or laws infringed." 24 How. St. Tr., 201. "It is their peculiar province to inform against and present all offenders against the criminal laws of the State." *State* v. *Wolcott*, 21 Conn., 272; *Ward* v. *State*, 2 Mo., 120; *State* v. *Terry*, 30 Mo., 368.

There can be no question about the fact that, at common law, a grand jury was charged especially with inquisitorial duties, and where there is probable cause to suspect that the law had been violated, they were considered bound by their oaths to institute inquiry and investigation. They had originally "the right to send for witnesses and have them sworn to give evidence generally, and to found presentments on the evidence of such witnesses." Wharton on Cr. L., § 457, note (h). But our statute (*The Code*, § 743) forbids the payment of the fees of any witness before the grand jury, unless summoned by direction of the foreman or Solicitor, as therein prescribed, or recognized by some Justice of the Peace to appear and testify before that body. While the grand jury is not allowed by the laws of North Carolina to send for witnesses generally for the purpose of inquisition, it is their duty to originate presentments as to all violations of law that have come under the personal observation or knowledge of each juror, and as to the commission of any offences of which they have information, which they deem credible and which is so specific as to the nature of the offence and witnesses as to enable the prosecuting officer to frame an indictment upon it. *State* v. *Ivey*, 100 N. C., 539.

The old method of originating prosecutions before grand juries seems to have fallen into disuse in the Federal Courts, because the Commissioners act under the advice of the District Attorneys, and a large number of officers and detectives are engaged in bringing offenders before the Commissioners for preliminary examination, and thus gathering evidence upon which prosecutions are founded. The practice is not uniform in the different States; but in the absence of legislation we must adhere to that long since adopted in our Courts. The statutes in some of the States seem to have been enacted with a view to instituting prosecutions exclusively by warrant, arrest and examination before a Justice of the Peace, and that mode of preliminary investigation has been adopted, instead of the inquiry by the grand jury leading to punishment.

The institution of criminal proceedings, either secretly, by presentment of a grand jury, or by the issue of a warrant, on information, by a Justice of the Peace, is often accompanied by abuses of power. In this State the Legislature has imposed some restraint upon the powers of both, but our ·law still leaves the grand jury clothed with authority to make presentments founded upon the personal knowledge of a member of the body, or information deemed credible by the body, and given in good faith. As they are forbidden by their oaths from presenting any one through envy, hatred or malice on their own .part, their powers are not to be used to gratify the malignity of others, and in acting on information they may scan the character and motives of those from whom it is derived. The juror, Jones, therefore, having heard the defendant testify on his own behalf in the former prosecution for carrying a concealed weapon, was bound to call the attention of the grand jury to the charge of perjury, if he believed he had committed that offence. The law which compelled him to make such a disclosure could not be construed to disqualify him from acting when the Solic-

itor preferred the same charge in the form of an indictment. The fact that the magistrate who committed defendant was foreman of the jury that returned the indictment against him, was held not to be good ground for motion to quash. *State* v. *Chairs,* 9 Baxter (Tenn.), 196.

The second ground of the motion to quash, embodied in the plea, is no more tenable. If the County Commissioners acted in good faith, as the law presumes they did, in laying aside the names of persons who, according to their best information, had removed from the county, or of those whom they did not know and know to be still resident in the county, such an irregularity or mistake, by which the name of a *bona fide* resident was laid aside, would not incapacitate a grand jury composed of good and lawful men to act. *U. S* v. *Ambrose,* 12 Myers' Fed. Dec., § 1854 (p. 520). The Commissioners were evidently endeavoring to comply with the requirements of *The Code,* § 1729, by taking out the names of persons no longer resident in the county. It has been held that the drawing and summoning of one or more incompetent jurors does not contaminate the work of the grand jury, if none such are actually drawn and sworn among its members.

In 2 Hawkins' Pleas of the Crown, chap. 25, § 16, the author says: "It seems clear that by the common law every indictment must be found by twelve men at the least, every one of which ought to be of the *same county.*" See also *Bell* v. *People,* 1 Scom. (Ill.), 399; *Carpenter* v. *State,* 4 Howard (Miss.), 163; *Wiley* v. *State,* 46 Ind., 363; *Fletcher* v. *People,* 681 Ill., 116. The section of *The Code* (1729), cited above, requires that the scroll containing names of jurors who have removed from the county be destroyed, while the preceding sections from 1722 to 1727 provide the manner of selecting jurors from the list of tax-payers resident in the county.

The juror's qualification must be determined by his status as to the residence and other statutory requirements at the

time of the service, and it is not sufficient that he was qualified when selected, if he removed to another county before the grand jury was impaneled. 2 Hawkins Pl. Cr., ch 43, §13; Thompson & Merrimon on Juries, §174; *Kelly* v. *People*, 55 N. Y., 565.

The plea was filed before arraignment, and was therefore in apt time. *State* v, *Gardner* (decided at this term).

His Honor's ruling was doubtless predicated upon. the ground that one of the jurors became a resident of Alleghany County after his name was drawn by the County Commissioners, and before he served as a member of the grand jury that acted on the indictment. Much inconvenience might be obviated if the Judges below would always interrogate jurors drawn as grand jurors as to whether they were residents of the county, parties to actions pending and at issue, or had paid their tax for the preceding year. In some of the States, after the preliminary investigation, no objection is entertained by plea in abatement, or motion to quash, for disqualification of the grand jury.

Affirmed.