Treash, J.
Benjamin F. Zell was indicted, and found guilty on April 29,1921, of raping Ruth X., a school girl, who bore the relation of grand-niece to *447 Mm by marriage, bis wife being a sister of the:girl’s grandmother. With the Zells at the time also lived a sister of Mrs. Zell. At the trial the girl testified that she had been in the. habit of visiting her aunts, who lived not far from the home of her parents, and that on the evening of March 18,1920, she went there to borrow a book, and, finding her aunts not at home, started to leave, when her uncle seized her by the arm, and with his hand on her throat forced her to accompany him to a shed in the rear of the house, where, forcibly and against her will, he ravished her, overpowering all her resistance. At the same time, she said, he threatened to kill her and her mother if she ever told anybody of the affair, and by reason of these threats and the shame and humiliation of the affair she never told her parents or other persons of the offense.
She attended school regularly until December 23, 1920, and neither her parents, teachers, friends or school mates suspected her condition. On December 24 she became ill, and in a few hours gave birth to a child. She then stated that Zell was the father of the child, and for the first time told of the circumstances of the offense. Zell at the time of the crime charged was 72 years of age, and the girl a few days past 16 years. The family physician testified that she was still a child, weighing less than 100 pounds, and was no more physically developed than a child of 13 years. She was a sophomore in high school and had never had any boy company or companions, and as far as the record discloses was a girl of unblemished character and reputation. Zell, a machinist by trade, was short of stature, strong and active for a man of his years.
*448 On the stand Zell denied the girl’s story in toto, and claimed he did not know anything concerning her condition until ten days after the birth of the' child, although he did admit that he and his wife had been invited and planned to go to the girl’s home for Christmas dinner on the day following the birth of the child, but did not go, and the record does not disclose any reason why they did not go. The next day after learning of the child’s birth he left Wooster, to seek work elsewhere, as he explained.
A motion for a new trial having been overruled, a petition in error was filed in this court seeking to reverse the judgment of the common pleas court.
There are numerous assignments of alleged error noted in the petition in error, but the principal ones relied upon in oral argument and in the brief of counsel may be classified as follows: (1) That the plea in abatement to the indictment should have been sustained, for the reason that the father of the prosecutrix was a member of the grand jury which returned the indictment against the defendant; (2) That the court erred in permitting the prosecuting witness to exhibit the baby to the jury during the giving of her testimony, and in permitting the prosecuting attorney to argue from such evidence the resemblance between the baby and the accused; (3) That the crime of rape was not proven, because there was no evidence of an outcry at the time of the alleged commission of the offense, nor complaint thereof on the part of the prosecutrix within reasonable time thereafter; (4) That the verdict of the jury was manifestly against the weight of the evidence.
(1) It has long been settled in this state that the presence of a near relative of the victim as a *449 member of the grand jury does not invalidate an indictment against one- accused. of crime committed. against such victim. The supreme court, in the case of State v. Easter, 30 Ohio St., 542, held:
“It is not a good plea to an indictment for murder, that a member of the grand jury which found such indictment, was a nephew of the person who was murdered.”
The reason for this is well stated by Wright, J., at page 543:
“The law has declared that certain qualifications are necessary. Can we go farther, and say the grand juror must also be no kin to those injured by the accused? A moment’s consideration will show that this would be imposing absurd and impossible conditions. The grand jury do not know who will be accused before them, and if, upon a case being presented in which an injury has been done to some relation of a member of the jury, that member is to be disqualified, it may be necessary to have a new grand jury for every crime committed.”
And it has also been held, in the case of State v. Deiter, 81 Ohio St., 504, that a plea in abatement does not lie in such a case.
(2) The second complaint is that the prosecuting witness was permitted to exhibit the child to the jury and the prosecuting attorney was allowed, over objection, to refer to and argue the resemblance of the child to the accused in order to establish its paternity, one of the particular comparisons being the red hair of the baby and the red hair which the accused admitted, on cross-examination, he possessed as a child.
There are no reported holdings upon this subject in this state in prosecutions for rape, and the deci *450 sions of courts of last resort in other states are in conflict. The case of State v. Danforth, 60 Atl. Rep., 839 (73 N. H., 215, 111 Am. St. Rep., 600), appears to be the leading and best reasoned case on the subject, holding as follows:
“2. In a prosecution for rape the state could not be confined to proof by oral testimony, and excluded from presenting to the jury a child bom to prosecutrix, as evidence tending to establish the fact of birth and prior unlawful intercourse; hence there was no error in exhibiting the child to the jury.
“3. In a prosecution for rape it was not error to permit counsel for the state to call attention to peculiarities in the features of a child bom to prosecutrix and of the defendant, and to a general resemblance between them, as, if defendant was the father of the child, his guilt was proved, and any evidence tending to establish that relationship was relevant.
“4. In a prosecution for rape, whether the features of a child bom to prosecutrix are sufficiently developed to authorize its use by comparison with defendant, as evidence on the issue of paternity, is purely a question of fact.”
A much-quoted case, of the same title, State v. Danforth, 48 Iowa, 43, 30 Am. Rep., 387, holds to the contrary. The point of divergence in the reasoning of these opposing doctrines seems to center about the immaturity and changing characteristics of a very young child, as compared to a mature person, and upon the claim that this evidence is so vague, uncertain and fanciful as to be misleading to a jury. Other courts have fixed a definite age limit as necessary before the evidence is admissible.
Most of the courts so holding concede, however, that there may be cases in which the maturity of the *451 child or the characteristics or peculiarities relied upon as ground of resemblance or dissimilarity render the evidence competent upon the issue of paternity.
We feel, however, that this objection goes to the weight rather than the competency of the evidence.
It is common knowledge among lay people as well as among experts that children do not develop uniformly, either mentally or physically, but that both mental and physical characteristics are transmittable by inheritance, and do frequently appear in offspring in various stages. of their development. A jury of laymen are as capable, of making the comparison when both the putative parent and child are before them as is the court. At least, it is difficult to see how the law can fix a definite time when such characteristics may safely be said to appear, when nature has fixed none. At best it would require the court to take expert evidence in each case to deterjnine when such period had arrived, if it were possible at all. Whether the features and characteristics of a child are sufficiently developed to warrant their use as evidence by a comparison with the alleged parent is purely a question of fact, not of law, and should be submitted to the jury for determination; and should not be decided by the personal impression of the court as a matter of law. Certainly, at least, the exhibiting of a child bom to prosecutrix within due time after the offense charged, is competent to go to the jury in a prosecution for rape, as evidence tending to corroborate the testimony of prosecutrix and establish the fact of birth and prior unlawful intercourse.
We will not review further the conflicting holdings of the courts of the various states.. They are cited
*452 and digested in able opinions referred to in a note to State v. Harvey, 112 Iowa, 416, 52 L. R. A., 500. See also note, 6 Am. & Eng. Ann. Oases, 560, 3 R. O. L., 764, and 1 Wigmore on Evidence, Section 166.
If this was a question of first impression, we might be inclined to be of more uncertainty as to its solution, but the supreme court of Ohio in Crow v. Jordon, 49 Ohio St., 655, has passed upon this very question in a bastardy proceeding, and has said at page 656 of its opinion:
‘ ‘ There was no error in permitting the child to be exhibited to the jury as evidence of alleged paternity, and in corroboration of the testimony of the prosecutrix. ’ ’
We have been unable to distinguish between the competency of such evidence in a bastardy proceeding and in a criminal prosecution for rape, and we believe there is none, either in reason or upon authority of reported decisions. The issue in both prosecutions to which the evidence is directed is the paternity of the child, and if relevant in one case it should be relevant in the other. From an examination of the holdings of many courts it appears that where such evidence has been admitted or excluded in bastardy proceedings it has likewise been consistently admitted or refused in rape cases.
We accordingly hold that in a criminal prosecution for rape, the child bom as a result thereof may be exhibited to the jury as competent evidence, together with other evidence upon the question of the paternity of the child and in corroboration of the testimony of the prosecutrix.
Such evidence being competent, it is not error for counsel for the state to comment thereon in his argument to the jury, and to call attention to any re *453 semblances between tbe child and the defendant, .and there was no error in the court admitting such evidence or in the conduct of the state’s attorney in commenting thereon.
(3) The silence and delay of the prosecutrix in making complaint of the commission of the offense is claimed as evidence absolutely refuting the girl’s story and establishing the innocence of the accused.
If this evidence stood alone or unexplained, unquestionably it would cast great discredit and suspicion upon the girl’s story, and might warrant the court in setting aside the verdict for failure of proof. But the girl did testify that she did struggle and tried to make an outcry, but was prevented by the hand of her assailant upon her throat, and was silenced by the threat of death to herself and her mother if she ever told of the outrage, and we consider this a proper matter for the determination of the jury, along with the other evidence bearing upon the guilt or innocence of the accused.
The relationship, age, size, and circumstances of the parties to this case make the statements of the supreme court in the case of State v. Labus, 102 Ohio St., 26, decided February 15, 1921, particularly appropriate to the case at bar. Judge Wanamaker, speaking for the court, says at page 38:
“The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other; as the relation between father and daughter under twelve years of age. With the filial obligation of obedience to the parent, the same degree of force and violence would not be required upon a person of such tender years, as would be required were the parties more nearly equal in age, *454 size and strength. But in the case at bar, there are sufficient threats, fright, intimidation and the like, coupled with the unnatural and atrocious act, to overwhelmingly prove the necessary force and violence to constitute rape, wholly independent of the presumption that the prosecutrix was incapable in law of consenting to such violence.”
Again, in the opinion in the case of Dunn v. State, 45 Ohio St., 249, at page 252, the court says:
“Silence and delay in making known the wrong would be likely to awaken suspicion and doubt as to the truth of complainant’s statement. ’ If, says Blackstone, she conceals the injury for any considerable time after she has had an opportunity to complain, such a circumstance would carry a strong presumption, though not conclusive, that her testimony is false or feigned. 4 Comm., 213. But when delay by the prosecutrix in making complaint or declaring the circumstances of the wrong has occurred, such delay may be explained, and excused by proof of sufficient cause therefor, as for instance, want of suitable opportunity, or duress, or threats by the perpetrator of the wrong.”
(4) The last assignment of error is that the verdict of the jury was manifestly against the weight of the evidence. All the members of this court have carefully read the entire evidence in the bill of exceptions, and have given the case careful consideration, especially in view of the age of the defendant, and while we are not insensible to the human appeal of the spectacle of so aged a man going to the penitentiary to spend what doubtless may be the remaining years of his life, yet we cannot find that the verdict of the jury was manifestly against the weight of the evidence but on the contrary do find the verdict was fully warranted by *455 the evidence and that there were no material errors committed in the trial, warranting a retrial of the case. The accused was represented by able and experienced counsel, who was untiring at every step of the proceeding in protecting his interests, and every right which the law guarantees to one accused of crime was accorded to him by court, jury and the state. The admissions of the defendant while on the witness stand, and his conduct after the birth of the child, furnish strong corroboration of the claims of the girl. In addition to the facts already stated the record discloses that Zell had been very friendly with the girl, giving her presents and helping her with her lessons.
On the day of the birth of the child he had gone to her home, but had been refused admittance by the girl’s grandmother, who waived him away, saying he was not wanted there, and he went without question or protest. He and his wife had been invited to her house for Christmas dinner the next day, but did not go or give any reason for not going. He claimed he did not know of the girl’s condition, or of the birth of the child until ten days after, when a relative who had been visiting the girl’s home came to his house and reported that Zell was charged with being the father of the child. The next day he left town, to get work as he claimed, and went from place to place, getting his mail at general delivery, and having mail sent to him by his wife from the railroad station box — not through the post office. For almost three months the sheriff was unable to locate him, although he searched his home and tried to trace his whereabouts.
All these facts and many others were before the jury. They heard and saw the witnesses. They had opportunity to note the appearance and demean- *456 or of the girl and defendant upon the witness stand, especially under cross-examination, when conscience is oftentimes more clearly revealed in appearances than by words; and after a fair trial twelve men found him guilty beyond a reasonable doubt of the crime charged in the indictment, and we, from a reading of the record alone, can find no reason for disturbing their verdict. What the defendant must suffer is the result of his own wrongdoing, and true now, as in the day it was first uttered, is the saying, “Verily, the way of the transgressor is hard.” So abhorrent and cowardly a crime, committed against a little school girl, could only come from a depraved and perverted nature, and the full penalty of the law is none too severe to meet it.
There are numerous other claims of alleged irregularities set forth in the petition in error, and we have examined each carefully, and while there were some slight errors and irregularities, such as occur in the trial of almost every case, yet we do not find that any one singly or all collectively constitute error materially affecting the rights of the accused.
The judgment of the common pleas court is affirmed, and case remanded for execution according to law.

Judgment affirmed. •

Washburn, P. J., and Pardee, J., concur in judgment.