## MARILYN SUSAN BARTRAM v. STATE OF MARYLAND

[No. 148, September Term, 1976.]

*Decided July 7, 1977.*

---

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*James P. Gillece, Jr.,* and *Gerard P. Uehlinger,* with whom were *Robert B. Barnhouse* and *Piper & Marbury* on the brief, for appellant.

*W. Timothy Finan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

In a final desperate attempt to void convictions of second degree murder and a related handgun offense, appellant, Marilyn Susan Bartram (Mrs. Bartram), framed as an issue to us on her petition for the writ of certiorari, "Did the State's conduct with regard to the Grand Juries which considered the petitioner's case mandate that the indictment of September 9, 1974 [sic] be dismissed?" [1] We answer the question in the negative.

The full facts surrounding this case are set forth in the opinion of the Court of Special Appeals in *Bartram v. State,* 33 Md. App. 115, 364 A. 2d 1119 (1976).

Mrs. Bartram's husband died as a result of gunshot wounds. Some nine months later she was indicted by the Grand Jury of Baltimore County. Apparently, three witnesses were in the grand jury room at the same time and

---

[1]. The actual date of the indictment in this case is August 26, 1974.

618

testified in turn in the presence of each other. A motion to dismiss the indictment was filed. The State then entered a nolle prosequi. The matter was submitted to a subsequent grand jury which returned a second indictment. On a motion to dismiss that second indictment the Deputy State's Attorney involved in the first incident advised the court:

> "We told the Grand Jury that we had had an error in our previous proceedings, which we freely admitted, and probably even explained the nature of the error. That is to say that we had more than two witnesses in the Grand Jury at one time. We fully understood, at the time, that we were making what amounted to a technical error that we could correct at anytime."

He further explained with reference to the proceedings before the grand jury leading to the return of the first indictment:

> "Corporal Wise, Detective Todd, and Dr. Fisher, I think, were all in the Grand Jury at the same time. If I may say to the Court, because of the technical nature of this case and because of the availability of Dr. Fisher, that and the investigative part of this case, at that time, that is why that was done." [2]

In many of the counties of Maryland grand jury testimony is not recorded. In Mrs. Bartram's case a transcript was made of the proceedings leading to the return of the first indictment but not of the second. At the hearing on her motion to dismiss when the parties were unable to agree as to what had taken place prior to the return of the second indictment the individual who at the time of that second indictment was the Deputy State's Attorney for Baltimore County, but who had since left that office, was brought into

---

2. Dr. Russell S. Fisher has been Chief Medical Examiner of the State of Maryland since 1949. He is well recognized in the field of forensic medicine. By Chapter 369 of the Acts of 1939 the General Assembly enacted what is now Code (1957) Art. 22 entitled "Post Mortem Examiners," replacing the former decentralized system of local coroners.

the courtroom and questioned by the trial judge. He said relative to the proceedings before the grand jury leading to the second indictment:

> "At the second one, it is my recollection that we summarized what the State's case was to the Grand Jury. I think we had one police officer there. That was the usual custom and practice in the case. The first time was entirely different from what we normally would do in front of a Grand Jury because of the technical nature of this particular case."

Mr. Bronstein, the former Deputy State's Attorney, was questioned as to whether or not Dr. Fisher's testimony was given to the second grand jury:

> "My recollection is that it wasn't. Dr. Fisher's testimony, I don't think we read any transcript. We merely spoke to the Grand Jury and I think with one of the detectives and summarized what the State's evidence was, which is perfectly proper. The Grand Jury is not a judicial body it is strictly investigative."

The proceedings further reflect:

> "THE COURT: I understand. Basically, then, what was done was that the State itself summarized the testimony they had?
>
> "MR. BRONSTEIN: Yes. If I remember correctly, Your Honor, I am speaking of course without notes and —

* * *

> "THE COURT: All right. On the second Grand Jury the evidence was given by a summation of the evidence that the State had.
>
> "MR. BRONSTEIN: And only one witness being present.
>
> "THE COURT: One witness gave testimony to that Grand Jury of that witness's evidence?

"MR. BRONSTEIN: That is correct, Your Honor.

"THE COURT: Is that correct?

"MR. BRONSTEIN: Yes. If the Court please, the State's attorney's office, at least at that time, made up a witness sheet for the Grand Jury, and I am looking at the witness sheet for that date and it indicates that Corporal Frederick Wise was the only witness summonsed to appear before the Grand Jury on that particular day. I don't have any recollection of anybody being there. I can hardly remember whether Detective Wise was there. I specifically remember him being there the first time and I think he was there for the second one."

In response to a question from the trial judge to defense counsel as to whether he desired to ask anything, the record reflects the following:

"MR. GILLECE: . . . Mr. Bronstein, when you say that you summarized, does that mean the State's attorney who was present read a summary of what the State's evidence was, read it to the Grand Jury?

"MR. BRONSTEIN: No, I think I narrated it.

"MR. GILLECE: You did it and not the witness?

"MR. BRONSTEIN: I think the combination thereof. You know, in using Detective Wise to explain certain things.

"MR. GILLECE: You presented other things yourself and told the Grand Jury about it?

"MR. BRONSTEIN: We told them, you know, basically, that this was the case and it was either murder or a triple shot suicide and that was the sum and substance of it.

"MR. GILLECE: You told the Grand Jury that there had been a previous indictment and it had to be dismissed because of a technical violation?

"MR. BRONSTEIN: I am almost sure I did but I can't say positively that I did that. It was my view,

at that time, and I still think it is the law, that, basically, the Grand Jury is privileged to hear anything except two witnesses at one time. It is an investigative body and can hear and say anything. We are perfectly free to narrate or anything that we want to."

From all of the above Mrs. Bartram presents three arguments as a basis for dismissal of the indictment: (1) "[t]he statement of the prosecutor that a previous grand jury had indicted [Mrs. Bartram], but that the indictment had to be dismissed because of a 'technicality' was clearly improper"; (2) "[t]he recitation by the prosecutor of his own narration of the case was manifestly unlawful"; and (3) "[t]he conclusory statement by the prosecutor that this case 'was either murder or a triple shot suicide' was argumentative and an impermissible attempt to influence the grand jury."

The quoted arguments of Mrs. Bartram do not constitute an accurate statement of the facts as a review of that portion of the record which we have quoted will reveal. Aside from that, however, she loses sight of the fact that a grand jury is an accusatory body, not a trier of fact.

Judge McSherry said for our predecessors in *Blaney v. State*, 74 Md. 153, 21 A. 547 (1891):

"However restricted the functions of grand juries may be elsewhere, we hold that in this State they have plenary inquisitorial powers, and may lawfully themselves, and upon their own motion, originate charges against offenders though no preliminary proceedings have been had before a magistrate, and though neither the court nor the State's Attorney has laid the matter before them. The peace, the government and the dignity of the State, the well-being of society and the security of the individual demand, that this ancient and important attribute of a grand jury should not be narrowed or interfered with when legitimately exerted. That it may in some instances be abused is

no sufficient reason for denying its existence. Though far-reaching and seemingly arbitrary this power is at all times subordinate to the law, and experience has taught that it is one of the best means to preserve the good order of the Commonwealth and to bring the guilty to punishment.

"Holding as we do that grand juries may, in this State, lawfully upon their own motion originate prosecutions against offenders, it is of no consequence how the case at bar was brought to their attention." *Id.* at 156-57.

Most of this language was repeated with approval by Judge W. Mitchell Digges for the Court in the case entitled *In re Report of Grand Jury,* 152 Md. 616, 621-22, 137 A. 370 (1927).

Our predecessors in *Owens v. Owens,* 81 Md. 518, 522, 32 A. 247 (1895), in an opinion by Judge Boyd, refused to permit a grand jury foreman to be queried on cross-examination as to why a grand jury had dismissed a proceeding. The Court there quoted with approval from *Elbin v. Wilson,* 33 Md. 135 (1870). In the latter case the Court said that a trial judge "erred in requiring the witness, Elbin, to state whether, as grand juror, he did not endeavor to have the appellee indicted for perjury, or whether he did not furnish names of witnesses to the foreman to be summoned for that purpose." Judge Robinson pointed out for the Court in *Elbin* "obvious reasons" for the rule relative to grand jury secrecy:

'[F]irst, in order to secure the utmost freedom of deliberation on the part of the Grand Jury, and freedom of disclosure on the part of informers; secondly, to prevent the escape of the party should he know that proceedings were in train against him; and thirdly, to prevent the testimony before them from being contradicted at the trial before the traverse jury by subornation of perjury on the part of the accused. 1 Greenl. Ev. sec. 252." [3] *Id.* at 144.

**3.** As to grand jury secrecy today *see* Maryland Code (1974, 1976 Cum. Supp.) § 8-213 Courts and Judicial Proceedings Article.

The language in *Elbin* quoted in *Owens* was:

"[A]ll the authorities concur in saying that the juror will not be permitted to state how any member voted, or the opinion expressed by his fellows or himself, or the individual action of any juror in regard to the subject-matter before them. *Com. v. Hill,* 11 Cush. 137." *Id.* at 144.

In *Hooker v. State,* 98 Md. 145, 156, 56 A. 390 (1903), Judge Boyd said for the Court, "[W]e cannot sanction the practice adopted in some jurisdictions, and contended for in this case, of permitting the accused to call the members of the grand jury to impeach indictments returned by them, after they have become and continue to be part of the records of the Court."

Judge Henderson stated for the Court in *Bernard v. Warden, House of Cor.,* 187 Md. 273, 279, 49 A. 2d 737 (1946), "This Court has held that the competency of testimony before a Grand Jury will not be inquired into by the courts. *Pick v. State,* 143 Md. 192, [196-97,] 121 A. 918 [(1923)]." [4] In *Pick,* cited in *Bernard,* our predecessors observed, "The law is well settled, that the competency of testimony before the grand jury will not be inquired into by the courts," giving as their authority *Holt v. United States,* 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021 (1910), and *United States v. Swift,* 186 F. 1002 (N.D. Ill. 1911). In *Pick* this Court quoted the language of the Supreme Court in *Holt* where Mr. Justice Holmes said for that Court:

"It is pressed with more earnestness that the court erred in not granting leave to withdraw the plea of Not Guilty, and to interpose a plea in abatement and motion to quash. The ground on which leave was asked was an affidavit of the prisoner's counsel that they had been informed by Captain Newton, of the Coast Artillery Corps, that

---

4. By coincidence, Judge McSherry, the author of *Blaney;* Judge Boyd, the author of *Owens* and *Hooker;* Judge Robinson, the author of *Elbin;* and Judge Henderson, the author of *Bernard,* each later served as chief judge of this Court.

he testified before the grand jury to admissions by the prisoner, but that these admissions were obtained under circumstances that made them incompetent. The affidavit added that aside from the above testimony there was very little evidence against the accused. Without considering how far, if at all, the court is warranted in inquiring into the nature of the evidence on which a grand jury has acted, and how far, in case of such an inquiry, the discretion of the trial court is subject to review, *United States v. Rosenburgh*, 7 Wall. 580, it is enough to say that there is no reason for reviewing it here. All that the affidavit disclosed was that evidence in its nature competent, but made incompetent by circumstances, had been considered along with the rest. The abuses of criminal practice would be enhanced if indictments could be upset on such a ground. *McGregor v. United States*, 134 Fed. Rep. 187, 192, 430. *Radford v. United States*, 129 Fed. Rep. 49, 51. *Chadwick v. United States*, 141 Fed. Rep. 225, 235." *Id.* 218 U. S. at 247-48.

In *Swift* there was a claim that incompetent evidence had been presented to a grand jury. Our predecessors in *Pick* quoted the first two paragraphs of the following:

"The cases are uniform to the effect that, except in those states in which, by statute, indictments are required to be returned on 'legal' or 'competent' evidence, the courts will not review the evidence received by a grand jury for the purpose of passing upon its competency. In the first place, no official record of the evidence introduced before the grand jury ordinarily is kept. In the second place, if, on a motion to quash, the competency of the evidence presented could be inquired into, the trial courts would be obliged to sit as courts of review, to examine into the correctness of every ruling made upon the evidence by the grand jurors. The obstructions to justice and the unnecessary and

uncalled-for waste of time, and consequent expense to the state as well as to defendants, which would result from such a course, are too obvious to need comment.

"In addition to this, the grand jurors are laymen. They do not know, and cannot be expected to know, the technical rules of evidence; and while, no doubt, it is the duty of the prosecutor to give them such aid as he may in that respect, he has no control over them. As a matter of fact, under the common law, and in the state of Illinois, where the common law prevails, grand jurors are entitled to indict upon their personal knowledge, and upon their experience as men of affairs, upon what has transpired in the community with reference to the case under their investigation. They cannot be expected to know what evidence is or is not legally competent. If, therefore, indictments are to be quashed because incompetent evidence was heard by the grand jury, the return of a true bill practically will become an impossibility.

"The authorities cited by defendants, in which indictments were quashed because the accused was called before the grand jury and examined, or because private counsel was permitted to appear and address the grand jury, are not in point. In those cases the indictments were quashed, not because incompetent evidence was received, but because the proceedings of the grand jury were unconstitutional and unlawful. Clearly, if the grand jury were improperly impaneled, or if certain classes of persons unlawfully were excluded from serving thereon, the matter could be brought to the attention of the court, and disposed of, by a motion to quash the indictment.

"The two propositions are radically different. It is one thing to quash an indictment because the accused, in violation of his constitutional right, is brought before the grand jury and browbeaten or

maltreated, or because private counsel is permitted to harangue the jurors, or because other like fundamental wrongs are permitted, and quite another thing to quash an indictment because a witness is asked concerning facts which mayhap do not tend to prove the charge which the grand jury is to inquire into. The one reaches to the organization or fundamental power of the grand jury to act; the other, granting that the grand jury was properly impaneled and had the power to proceed, involves the proposition that it acted upon incompetent evidence, and therefore reached an irrational conclusion."*Id.* 186 F. at 1018-19.

Such an old authority as J. Bishop, *New Criminal Procedure* § 865 2 (4th ed. 1895) states at p. 499 relative to sufficiency of the evidence that the question "is for the grand jury, and the indictment cannot be quashed should the court afterward deem it inadequate." He further observes in § 872 5 relative to defects in evidence at p. 506, "[I]n broader terms, it seems that the sufficiency of the proof, or the mode of examining the witnesses, cannot be inquired into to invalidate an indictment."

Mrs. Bartram sees help for her case in *Coblentz v. State*, 164 Md. 558, 166 A. 45 (1933). That case is not apposite. Reversal in it came because of the presence in the grand jury room of an unauthorized person, an attorney who represented certain plaintiffs in civil litigation against the banking institution of which the defendant was president. The president was accused of accepting a deposit when the institution was, to his knowledge, insolvent. It was pointed out that although then Code (1924) Art. 10, § 27 permitted a circuit court to appoint an attorney to take the place of a State's attorney when necessary because of absence, sickness, resignation or death of the State's attorney, that "section [could] not be involved in the [Coblentz] case, because there was no absence, death, or disability of the state's attorney regularly serving, and it [did] not fit the description of the order passed." It goes without saying that the presence of an unauthorized person in the grand jury

room could betray the secrecy of the proceeding. In the course of the opinion Chief Judge Bond made certain observations for the Court relative to the functions of the grand jury:

"The grand jury is an accusing body, and not a judicial tribunal; and it acts upon knowledge possessed by its members from any source, whether from witnesses brought before it, or from information gained before its sessions. 'In this state they have plenary inquisitorial powers, and may lawfully themselves, and upon their own motion, originate charges against offenders, though no preliminary proceedings have been had before a magistrate, and though neither the court nor the state's attorney has laid the matter before them.' *Blaney v. State*, 74 Md. 153, 21 A. 547, 548; *In re Grand Jury Report*, 152 Md. 616, 137 A. 370. And their oath requires them to present all things truly as they come to their knowledge, according to the best of their understanding." *Id.* at 566.

*Coblentz* is instructive because:

"A second objection advanced in [that case] was that nine members of the grand jury were disqualified from serving in the investigation and from finding this particular indictment because they had been subject to losses as depositors in the Central Trust Company, or in other depositaries which had been merged with that company, and were embittered against the defendant; and because the foreman, one of those depositors, had publicly declared his hostility to the defendant and charged him with fraud." *Id.* at 570.

The Court said:

"This objection we find insufficient to support the plea. The grand jury, as has been observed, is not a judicial body; it is an accusing body, permitted to act upon knowledge obtained by its members from

any source. Under the requirements of the statute law of the state, Code [(1924)] art. 51, secs. 7 to 10, they are chosen with judgment and discretion with reference to their intelligence, sobriety, and integrity; and they are sworn to present no person for envy, hatred, malice, or ill will. But there are no statutory provisions in Maryland, as there are in some other states, prescribing additional cautions or qualifications, and we find no ground for imposing a requirement that they must be unprejudiced, as the objection demands. On the contrary, such a requirement would seem inconsistent with their freedom to accuse upon their own knowledge, for persons who come with knowledge sufficient to serve as a basis of indictment are likely to come with the conclusion and prejudice to which that knowledge leads. They must act upon their own convictions, after conferring secretly and without any interference; but they are not required to come without any prejudice. It has sometimes been held that a direct pecuniary interest in a prosecution might serve to disqualify a grand juror, but there is seldom such a direct private interest involved in criminal prosecution; and none is involved here." *Id.* at 570-71.

Judge Gilbert quoted from *Coblentz* for the Court of Special Appeals in *Hopkins v. State,* 24 Md. App. 53, 63, 329 A. 2d 738 (1974), *cert. denied,* 274 Md. 728 (1975). A contention was made in *Hopkins* that inclusion of a police officer as a member of a grand jury was improper. In the course of holding that "the jury judge did not abuse his discretion in refusing to exclude a policeman from grand jury service," Judge Gilbert said for that court:

"It has been held that a person is not disqualified to serve as a grand juror on the ground that: (a) he was the prosecutor of the case, *U. S. v. Williams,* 28 F. Cas. 666 (No. 16,716) (C.C.D. Minn. 1871); (b) he

was a relative of the person the accused was alleged to have injured, *Collins v. State*, 3 Ala. App. 64, 58 So. 80 (1912); (c) the complaining witness, *Holmes v. State*, 160 Ark. 218, 254 S. W. 470 (1923); (d) the son-in-law of the murder victim, *Oglesby v. State*, 83 Fla. 123, 90 So. 825 (1922); (e) the father of a rape case prosecutrix, *Zell v. State*, 15 Ohio App. 446, 32 Ohio C. A. 385 (1922); (f) the committing magistrate, *State v. Chairs*, 9 Baxt. (Tenn.) 196 (1877); (g) a member of a petit jury before whom perjury was alleged to have been committed, *State v. Wilcox*, 104 N. C. 847, 10 S. E. 453 (1889); (h) a special police officer, *Commonwealth v. Hayden*, 163 Mass. 453 (1895); (i) a member of an organization the object of which was to detect crime, *Musick v. The People*, 40 Ill. 268 (1866); (j) that he had previously issued a warrant for and expressed an opinion as to the guilt of the accused, *United States v. Belvin*, 46 F. 381 (1891); (k) a deputy sheriff, *Owens v. The State*, 25 Tex. App. 552 (1888)." *Id.* at 64.

In *Costello v. United States*, 350 U. S. 359, 76 S. Ct. 406, 100 L. Ed. 397 (1956), the presentation of the government's case upon the merits consisted of 144 witnesses and 368 exhibits. It was developed on cross-examination that three investigating officers had been the only witnesses before the grand jury. A motion to dismiss the indictment was made on the ground that the only evidence before the grand jury was hearsay since the three officers had no firsthand knowledge of the transactions upon which their testimony was based. Mr. Justice Black referred to *Holt v. United States, supra,* 218 U. S. 245, 248 and the observation by Mr. Justice Holmes there that "[t]he abuses of criminal practice would be enhanced if indictments could be upset on such a ground" as incompetent evidence. Mr. Justice Black then went on to say for the Court:

"The same thing is true where as here all the evidence before the grand jury was in the nature of

'hearsay.' If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Id.* at 363.

In *Everhart v. State,* 274 Md. 459, 337 A. 2d 100 (1975), Judge O'Donnell observed for this Court:

"Since the petitioner's arrest was based only upon his presentment and indictment by the grand jury and even the submission unto the grand jury of evidence obtained in violation of his constitutional rights would not impair the ᵥvalidity of his indictment, we must equally conclude that the alleged taint of the evidence set forth in the application for the search warrant had no bearing upon the legality of his arrest." *Id.* at 487-88.

He quoted for the Court in that opinion from Mr. Justice Powell's opinion for the Supreme Court in *United States v. Calandra,* 414 U. S. 338, 94 S. Ct. 613, 38 L.Ed.2d 561 (1974):

"Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the

conduct of criminal trials. 'It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.' *Blair v. United States*, 250 U. S. 273, 282 (1919).

\* \* \*

"The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, *Costello v. United States, supra; Holt v. United States*, 218 U. S. 245 (1910); or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination, *Lawn v. United States*, 355 U. S. 339 (1958)." *Id.* at 343, 344-45.

The issue in *Calandra* was whether a witness summoned to testify before a grand jury could refuse to answer questions on the ground that they were based on evidence obtained from an unlawful search and seizure. The Court held that this was not a proper basis for refusing to answer the questions.

We see no impropriety in the explanation by the prosecutor to the grand jury that he had not proceeded under an earlier indictment. The evidence here would seem to indicate that there was testimony before the second grand jury from at least one police officer. As stated in 1 F. Wharton, *Criminal Procedure* § 219 (12th ed. C. Torcia 1974), "The prosecuting attorney may, and indeed must, attend on the grand jurors with the matters upon which they are to pass, aid in the examination of witnesses, and

provide such instructions on the law as they may require ...." Placed in that context we see no error in an observation by the State's attorney to the grand jury that the case "was either murder or a triple shot suicide." Mrs. Bartram's husband died of three gunshot wounds, two in the head and one in the chest. The medical examiner said that one head wound would have produced immediate death and the other, unconsciousness. Mrs. Bartram claimed her husband committed suicide. We interpret this statement of the prosecutor as nothing more than a recitation of Mrs. Bartram's defense and the legal opinion of the grand jury's duly constituted legal adviser that if the grand jury concluded that this was not suicide but homicide, then the facts were legally sufficient to support an indictment for murder. This statement in no wise usurped the grand jury's function. He certainly was not telling them that it was their duty to return an indictment. It remained for them to determine whether there was probable cause for believing that Mrs. Bartram was the responsible party. In that case it then became their duty to return an indictment. On the other hand, if the incident were a triple shot suicide, then there was to be no indictment. It was for the grand jury to determine whether there was probable cause to believe that an infraction of the law had taken place and that Mrs. Bartram was the responsible party.

We note that Judge Moylan said for the Court of Special Appeals in this case:

"The appellant complains that her indictment may have come at the hands of a grand jury that was not fair and impartial. We know of no such requirement. A petit jury must, of course, be unbiased and impartial. Elaborate voir dire procedures exist to root out possible bias. Partiality would be grounds for a challenge for cause. No such screening devices are applicable to a grand jury. There is no more requirement that a grand jury be impartial than that a prosecutor be impartial or that a policeman be impartial. They must all play

within the rules. The acid test of their actions, however, will come when the petit jury renders its verdict upon the charges they have brought.

\* \* \*

"The propriety and the sufficiency of the grand jury indictment now in issue were put to the ultimate test of the petit jury's verdict; they were found to be not wanting." *Id.* 33 Md. App. at 183, 184.

Given the fact that a grand jury is an accusatory body which hears but one side of a case, not a trier of fact which hears both sides of a case and makes a determination accordingly; the traditional view of the grand jury as an investigatory body which may return an indictment based not upon testimony before it but on knowledge of its members gleaned in the community from which the panel is drawn; the holding of our predecessors that the competency of testimony before a grand jury will not be inquired into by the courts; the fact that the State's Attorney is a sworn officer of the State who has a role to play as the legal adviser of a grand jury; the holding of the Supreme Court that indictments may be returned based upon hearsay or illegally obtained evidence; and the fact that, paraphrasing slightly the observation of Mr. Justice Holmes in *Holt,* the abuses of criminal practice would be enhanced if indictments could be upset on grounds and procedures similar to this, thereby causing substantial delay as pointed out by Mr. Justice Black in *Costello,* we conclude that there was no conduct here on the part of the State or other imperfection in the grand jury proceedings which mandates the dismissal of the indictment.

*Judgment affirmed; appellant to pay the costs.*